Haynes, J.
A petition in error is filed in this case for the purpose of reversing the action of the court of common pleas in a certain proceeding in contempt.
The petition of the relator sets forth that:
“At the April term of this court, 1898,the plaintiff, then Mary E. Pancost, by the consideration of said court, in an action therein pending wherein Mary E. Pancost was plaintiff, and Albert W, Pancost was defendant, obtained a decree against defendant, a part of which is in words and figures following, to-wit:
“ ‘And it is further ordered, adjudged and decreed, that the defendant Albert W. Pancost shall pay to the said plaintiff, Mary E. Pancost, for the care, custody and maintenance of each of said minor children Olive Pancost and Leslie Pancost, the sum of $675, payable at the rate of $13.75 per month, for each of said children, payments to be *247 made on the 1st and 15th of each and every month hereafter until the full sum of $675 has been paid, for the care and maintenance of each of said children, The first payment to be made as of July 1, 1893; and upon default of payment of the amount herein ordered, for five successive days, execution shall issue against the defendant for any amount remaining unpaid,’ ”
It then admits the payments of sums up to a certain amount, and says that since that time the defendant has wholly failed to pay the remaining amount that is due. Demurrers were filed to that petition, which were overruled, and an answer was filed, in which the defendant stated that he admitted that at the April term of this court,1893, Mary E. Pancost obtained a decree of divorce, and admits the decree as set out.
And answering further, defendant says that he is a married man, and the head and support of a family consisting of a wife and one child; that he is not the owner and holder of a homestead; and that his daily earnings are all necessary for the support of h.is family. Wherefore defendant asks that said charges in contempt be dismissed, and for other and proper relief.
An order having been made to which I will refer shortly, the defendant filed a motion for a new trial, in which he set forth, among other things, that the decision of the court was contrary to law and contrary to the evidence; that the court erred in the admitting of evidence and in rejecting evidence. The testimony was heard of Mr. Hamilton, who was the cashier of the Milburn Wagon Co., and of Mary E. Lauder, the divorced wife, and of himself, and certain letters were introduced in evidence. Upon the hearing of the evidence and the argument of counsel, the court made an order which recites the original decree, and found as was stated therein, that certain payments had been made on account of the support of the children, but found that certain”amounts were'unpaid, and that there was due at *248 that time “the sum of $495.65, and of interest the sum of $18.41, and of installments not yet due,there remains to be paid of that for the month of August, 1897, the sum of $10.65.”
“And the court .further finds that said Albert W, Pancost is guilty of contempt of this court, as in said charges set forth, and said contempt consists in the omission to do acts which it is yet in his power to perform.
“ Wherefore,it is considered by the court that the said Albert W. Pancost be committed to the county jail of Lucas county, and therein confined until he shall have fully complied with the order'of the court in the case of said Mary A. Pancost v. Albert W. Pancost, rendered at the April term of this court, A. D. 1893, so far as the same relates to the payment by said Albert W. Pancost to the said Mary A. Pancost, of money for the support and maintenance of Olive Pancost and Leslie Pancost, children of said Albert W. and Mary A. Pancost, and until he pay the costs of this proceeding, including a fee of $25 each, to James M. Brown and John Berry, attorneys, heretofore appointed to prefer charges herein against said defendant, which he is hereby ordered to pay; and it is further ordered, that an order of commitment issue-to the sheriff of Lucas county in accordance herewith.”
The proceeding is had under sec. 5640,Revised Statutes:
‘ A person guilty of any. of the following acts may be punished as for a contempt:
“1. Disobedience of,or resistance to,a lawful writ, process-, order, rule, judgment, or command of a court or an officer.”
And it is under that first clause that the proceedings are had. Sec. 5644, provides:
“Upon the day fixed for the trial the court shall proceed to investigate the charge, and shall hear any answer or te&timony which the accused may make or offer.”
.“Sec. 5646. When the contempt consists in the omission to do an act which is yet in the power of the accused to perform, he may be imprisoned until he performs it.”
Argument has been made before the court as to whether *249 the court had jurisdiction to issue this order under sec, 5640, for the reason that it was claimed that the order so made was a final judgment, and not properly an order of court. That part of the order in the original proceedings on which it was based, provided that he should pay $675, J‘and upon default of payment of the amount herein ordered for five successive days, execution shall issue against defendant for any amount remaining unpaid.” It is claimed on behalf of the relator that this was an order pure and simple, and is distinguishable from the judgment which is rendered for alimony in favor of the wife.
Sec. 5696, provides:
“The granting of the divorce, and the dissolution of the marriage, shall in no wise affect the legitimacy of the children of the parties thereto; and the court shall make such order for the disposition, care,- and maintenance of the' children, if there are any, as is just and reasonable.”
Sec. 5699 defines the rights of the parties when a divorce is granted by reason of the agression of the husband, and it is provided, among other things, that property may be allowed to the wife-for alimony, or it may allow alimony in real or personal property, or both, “or by decreeing to her •such sum of money, payable either in gross or in installments, as the court deems just and equitable.”
Now, whether this be such a final order that a court cannot take jurisdiction of it to issue an order for contempt, or whether it be such an order as comes within the first section of 5640, we shall not decide to-day. We leave that •open for future consideration and future decision, if the necessity shall ever arise for deciding it.
Inquiry was made of counsel whether the exemptions allowed to heads of families and w.idows, in sec. 5480, were applicable to a case of this kind. That provides that:
“Every person who has a family, and every”widow, may hold the following property exempt from execution, attach *250 ment, or sale, for any debt, damages, fine, or amercement, to-wit: :j .¿2
“6. The personal earnings of the debtor, and the personal earnings of his or her minor child or children, for three months, when it is made to appear, by the affidavit of the debtor, or otherwise, that such earnings are necessary to the support of such debtor, or of his or her family; and such period of three months shall date from the time of issuing any attachment or other process, the rendition of any judgment, or the making of any order, under which the attempt may be made to subject such earnings to the payment of a debt. ”
The supreme court, in a case reported in 50 Ohio St., 576, had under consideration the question whether a judgment for alimony was a judgment that became a lien upon lands, and discusses this question of debt. I read from page 481:
“It is contended in argument that alimony is not a debt, and if not, that it is difficult to see how it is a lien unless expressly made so by the court. But, in Lockwood v. Crum, 34 Ohio St., 1, it is well said by Boynton, J,, in delivering the opinion of the court: ‘The claim for alimony rests on the common law obligation of the husband to support the wife in a manner suitable to his condition and stañon in life during the existence of the marriage relation. And this obligation is as binding after the commission, by the husband, of a marital offense entitling, the wife to a divorce, as before. In respect to such obligations she may well be held to be a creditor of the husband. ’ In Chase v. Chase, 105 Mass., 385, it was held that a judgment for alimony in the case of a divorce a vinculo, or from bed and board, creates a debt of record in favor of the wife, and that she is entitled, as a creditor, to impeach a conveyance made by him with intent to defraud her. It is said by the supreme court of the United States, in Barber v. Barber, 21 How., 582, 595, that when the court having jurisdiction of her suit, allows the wife from her husband’s means, by way of alimony, a suitable maintenance and support, ‘it becomes a judicial debt of record against the husband; and it is as much a debt of record, until the decree has been recalled, *251 as any other judgment for money is. ’ And if the duty of the husband to provide proper maintenance and support for his wife, before and after a decree of divorce, is not technically a debt, it is, nevertheless, a paramount obligation springing out of a sacred relation, which, when it has passed into judgment, should, as such,carry with it the well known binding force that attaches to judgments at law.’’
In the case of Pretzinger v. Pretzinger, 45 Ohio St., 452, I read from the syllabus:
“The obligation of the father to provide reasonably for the support of his minor child, until the latter is in a condition to provide for his own support, is not impaired by a decree which divorces the wife a vinculo on account of the husband’s misconduct, gives to her the custody, care and nurture of the child, and allows her a sum of money as alimony, but with no provision for the child’s support.
“The mother may recover a reasonable compensation from the father, for necessaries furnished by her to the child after such decree, and may maintain an original action for such compensation against the father, in a court other than that in which the divorce was granted.”
That case differs from the case at bar in this: that here there was this allowance to the wife for the support and maintenance of these minor children; so that obligation, so far as this case is concerned, is carried into that order, or judgment, if it be a judgment (for it seems to have the form of a judgment, in that it allows execution to be issued upon the non-payment on the sums).
But whether or not the exemption should be held to apply in a case of this kind, or in this particular case, we shall not definitely decide, for the reason that we do not think it is necessary. At the same time it will be seen by the decision of the supreme court that it might be very proper to take it into consideration when we come to consider the question of the property that the plaintiff has with *252 which to meet this obligation which is imposed upon him by this order. We think, however, that this order was not made within the meaning of the statute which I have read: ‘‘When the contempt consists in the omission to do an act which is yet in the power of the accused to perform, he may be imprisoned until he performs it.”
Now, it will be observed that the order directed him to pay the sum of $495 and $18.41 of interest,and he was further directed to pay $50 as attorneys’ fees,and was directed to pay the costs of the contempt proceedings. In our judgment the testimony clearly shows that he was not in a condition or had the power at that-time to perform the order The testimony shows that he had during the previous year been earning at the rate of $100 a month, and that since the 1st of January last, and up to the 12th of July, when the order was made, he had been earning about $60 a month, or a little over. Some of the testimony shows that for the ordinary necessities of the house, such as living, light, fuel, etc., it was costing him $40 a month. He had other incidental expenses, which practically left him at the •end of each month without any money arising from his earnings during the month. And it further appears,that he had no other property which was available to pay this amount. It is true that he had some interest in property in South Carolina, in real estate, but it was then out of his possession, under some arrangement whereby the use and income •of it should go to pay certain liens upon it, and also to make certain improvements upon it, for which a power of attorney bad been executed to his brother, who was carrying out the arrangement. So at the time this order was made the defendant had no money whatever applicable to the payment of this amount, Defendant was a married man,as he sets up in his answer,and says he had one child, ■which I suppose is a child by .his subsequent marriage. At any rate he was a married man, was keeping house, and *253 he was lawfully married — 'that is, he had a right to marry. And he was bound to support that wife and maintain her according to his circumstances. He was also bound to maintain his children, either through the order that had been made by the court, or independent of that order, under his general liability to support his children. If an order had been made for some limited amount, so that he could fairly lay aside some little sum from his earnings, aside from the questions of exemptions, it would present a very different question. To impose upon him the duty of paying this amount — the sum of $550 — and the costs of this court, we think was an excessive order, from the testimony of the case.
In regard to the attorneys’ fees we are unable to find any authority for the court directing their payment. But whether the court was authorized to do that or not, we are clearly of the opinion that he had no authority to order this man to be imprisoned at that time for the payment of those attorneys fees, nor for the payment of the costs made in the contempt proceedings. In support of that we cite a case from 80 Mo., 447. I read from the syllabus:
Petitioner was found guilty by the circuit court of Jackson county, of contempt in wilfully violating its restraining' order, by removing and refusing to return certain fixtures in controversy in a pending civil suit, and was adjudged to. pay the adversary party therein $150, as costs and ex-penes incurred by the latter in the contempt proceedings; also to pay a fine of $500, and that he restore the property mentioned in the order and be committed to jail untiJ he paid said sums of money and returned the property. Hold, that so much of the judgment of the court as related to the payment of the fine and the $150, was illegal and void.
The case is a lengthy-one, and discusses many questions under their statutes; but where they hold that he might be *254 imprisoned for not returning the property, they say:
Horace A. Merrill, for Plaintiff in Error.
J. M. & W. F. Brown, and John Berry, for Defendant in Error.
Here the court had jurisdiction, and the imprisonment of the petitioner until he should comply with the order of the court, was warranted by law. After he shall have restored the goods the prisoner will be entitled to.his discharge, the other requirements of the judgment being nullities. Feely’s case, 12 Cush., 598; People v. Markham, 7 Cal., 208.
For these reasons the judgment of the court will be reversed, and the defendant be discharged, and the case be remanded to the court of common pleas.