RUSSICK *v.* RUSSICK.

1. DIVORCE—MODIFICATION OF DECREE—FRAUD.

Petition requesting trial court to amend decree of divorce so as to grant custody of boys, now 5 and 7 years old, to defendant mother *held,* not to have been so worded as to indicate to the court that such relief was sought because of fraud in separation agreement and trial court specifically stated that fraud was not charged in the petition.

2. SAME—CUSTODY OF CHILDREN.

Denial of mother's petition for custody of 5- and 7-year-old boys whose custody she relinquished to father at time of separation is affirmed, where it appears the mother remarried in violation of decree of divorce, has shown little concern for the welfare of the children and father's devotion has been proven by his care for them for nearly 4 years; it appearing at least that it is too soon to make a change and that it is for the best interests of the children that they remain with their father.

Appeal from Missaukee; Holbrook (Donald E.), J., presiding. Submitted January 2, 1951. (Docket No. 28, Calendar No. 44,950.) Decided May 14, 1951.

Divorce proceedings between Theodore L. Russick and Mable Russick. On petition of defendant for amendment of decree to give her custody of children. Order refusing amendment. Defendant appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 17 Am Jur, Divorce and Separation, § 684.

*Jack W. Korn,* for plaintiff.

*W. Murray Campbell, Alfred J. Fortino* and *John M. Dunham,* for defendant.

REID, C. J.   From a decree denying defendant's petition for modification of a decree of divorce so as to grant custody of young children to defendant, defendant appeals.

The parties were married in Ohio, apparently in 1941.   There are 2 children of the marriage, Charles T., born May 21, 1944, and Robert L., born December 14, 1945.

Plaintiff filed his bill for divorce January 10, 1948. A separation agreement filed April 15, 1948, was dated and signed and acknowledged, December 31, 1947.   Defendant left the home and thus the parties had become separated on December 30, 1947, the day before the agreement was made.   The agreement recited the separation.

The agreement among other things provided:

"It is further understood and agreed that the said children of the parties hereto, Charles T. Russick and Robert L. Russick, shall remain and be in the custody and control of the said party of the first part [*i.e.,* Theodore L. Russick, the plaintiff]."

The divorce decree dated April 15, 1948, among other things provided:

"Custody of minor children

"It is further ordered, adjudged and decreed that the said plaintiff, Theodore L. Russick, shall have the care, custody and control of Charles T. Russick and Robert L. Russick, infant children of the parties hereto, until they respectively attain the full age of 18 years, or until the further order of the court, but that the said defendant, Mabel E. Russick, shall have the right to visit the said children at all reasonable times and under all reasonable circumstances."

The decree further forbade defendant to remarry for a period of 2 years from and after the date of the decree. No appeal was taken from this decree.

Defendant married Laurence Hicks, August 4, 1949, at Frankfort, Indiana.

A petition by defendant to amend decree and change custody was filed December 12, 1949, about 20 months after the date of the decree. An amended petition to change decree was filed December 31, 1949.

Defendant claims in her brief that her petition alleged that there was fraud committed on her by plaintiff in order to obtain her signature to the separation agreement. An examination of the petition convinces us that the petition is not so worded as to indicate to the court that petitioner was requesting the court to cancel the agreement for fraud. The petition contained no such prayer. The court recites in his opinion:

"The matter of the petition for modification of the property settlement as contained [in] the original decree of divorce was not considered by consent of all parties concerned for the reason that the petition as drawn did not charge any fraud and there being serious question as to whether a property settlement once made, either by agreement between the parties and embodied in the decree, or by the court, can be modified unless a petition to modify is filed within 4 months after the entry of the decree. *Losie* v. *Losie,* 323 Mich 300; Court Rule No 48, § 1 (1945). Especially where there was no allegation and the petition failed to allege fraud."

No ground is alleged by defendant in taking her appeal that an erroneous adverse ruling was made by the trial court as to any claim asserted by defendant for fraud in procuring her signature to the agreement. Under the circumstances, we do not disturb the court's ruling that fraud was not charged in the petition.

Since the divorce decree was entered, and in violation of the terms of the decree, defendant has married the man with whom she was infatuated when she signed the separation agreement giving the custody of the children to the plaintiff.

Plaintiff took the children to the home of his married sister in Cleveland, Ohio. The house has 5 rooms downstairs, 3 rooms upstairs; living there are plaintiff's sister and her husband, plaintiff's nephew and his wife, besides plaintiff and his 2 sons; the upstairs is being made into an apartment. Plaintiff was expected by defendant to take his children there when defendant left plaintiff and gave him the custody of the children. Defendant testified, "I just figured that's what he would do." Plaintiff is well able to take care of his children suitably. The home in Cleveland is suitable. Plaintiff did his part when defendant failed to care for her children because of her infatuation.

The defendant must be considered as having some love for her children, but it is not too great. Her contact with them is shown as follows:

"*Q.* Have you been writing to the children?

"*A.* No, I didn't write to them because they're too young to be able—they're not old enough to read.

"*Q.* How old are they?

"*A.* One is 4 and the other is 5, going on 6.

"*Q.* Did you send them cards?

"*A.* I have sent them birthday cards and Christmas cards.

"*Q.* Have you sent them gifts?

"*A.* Yes, for all the birthdays and Christmas."

Defendant's sister Jean Sorensen testified:

"I was in the home of my sister and Mr. Russick when they were married and I observed my sister and her conduct toward her children. There was different times when I thought she could have did a

better job. She said different things to them that I and a lot of mothers wouldn't say to the children; tell them to shut their mouths and get the .... out of here. Well, when they wanted things to eat. Ted was not usually present when she said that; he'd be outside or in another room. She never picked them up and loved them and told them that she loved them; and instead it was just the contrary, she didn't say anything to them. There were different things that Ted had told me he had caught her doing to them. That's about it, that she didn't seem to care for them. As far as morally is concerned, I don't think my sister is an unfit mother to have the custody of these children."

Defendant cites *Terbush* v. *Terbush,* 328 Mich 703, in which case the defendant wife never voluntarily gave up custody of her children but always consistently did her utmost for them. Mrs. Terbush in that case exhibited a constant love for her children far excelling the affection shown by Mrs. Russick in the instant case. See, also, *Sweet* v. *Sweet,* 329 Mich 251.

In the instant case, the defendant mother voluntarily relinquished the children and made no effort to obtain custody nor greatly concerned herself with their welfare for a period of almost 2 years. The court must consider these factors in determining whether her love for the children and willingness to resume their care and upbringing is of sufficient strength so that the welfare of the children will be better served by their removal from the father whose devotion has been proven during the trying days of the children's early infancy.

The trial court in his opinion after citing and commenting on *Remus* v. *Remus,* 325 Mich 641 and *Reynolds* v. *Reynolds,* 323 Mich 332, said:

"The court feels that there is no question but what the defendant in the case at bar has not forfeited her rights to have custody of the minor children provided

it is for the children's best interests. This case is very similar to a late Michigan case * * * [*Sperti v. Sperti*, 326 Mich 620].

"The court is mindful of the defendant's alleged natural love for her children and the court is always desirous that a mother have the custody of young children after she has proven that she is the proper person and can maintain a proper home. The court at the present time is not convinced of these facts, nor is it convinced that it would be for the best interests of the children to take them from the home where they are now located and where they are getting along well and place them in a home that has been just recently established under conditions as set forth hereinabove. The court believes that it is too soon to make any change in the custody and control of the minor children and that it is for the best interests of the said minor children for the present to remain with the father in Cleveland, Ohio."

We do not feel certain that if we had heard the testimony in the first instance, we would have come to a different conclusion.

We concur in the trial court's opinion as cited. The decree appealed from is affirmed. Costs to plaintiff.

BOYLES, NORTH, DETHMERS, BUTZEL, CARR, and SHARPE, JJ., concurred with REID, C. J. BUSHNELL, J., concurred in the result.